# NOT DESIGNATED FOR PUBLICATION

## STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

## 2021 CA 0269

### JA'MIRA PAUL on behalf of minor child J. PAUL

### VERSUS

### LDG PORT ROYAL DEVELOPMENT, L.L.C. and AXIS CAPITAL

Judgment Rendered: OCT 1 8 2021

* * * * * * *

On Appeal from the 19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. 686793

Honorable William A. Morvant, Judge Presiding

* * * * * * *

Kendall Plain
Baton Rouge, Louisiana

Attorney for Plaintiff/Appellant,
Ja'Mira Paul on behalf of minor
child J. Paul

Jennifer L. Simmons
Matthew T. Biggers
New Orleans, Louisiana

Attorneys for Defendants/Appellees,
LDG Port Royal Development, L.L.C.
and Axis Surplus Insurance Company

* * * * * * *

**BEFORE:  WHIPPLE, CJ., PENZATO, AND HESTER, JJ.**

**PENZATO, J.**

The plaintiff, Ja'Mira Paul, on behalf of her minor child, J. Paul, appeals the trial court's judgment denying, in part, her motion to strike exhibits, granting a motion for summary judgment in favor of the defendants, LDG Port Royal Development, L.L.C., and Axis Surplus Insurance Company, and dismissing her claims. For the reasons that follow, we vacate the judgment in part and affirm the summary judgment.

## FACTS AND PROCEDURAL HISTORY

Ms. Paul and Jamison Tate ("Mr. Tate") are the parents of a minor child, J. Paul. On August 23, 2018, Mr. Tate was fatally shot at the Port Royal Apartments in Baton Rouge, Louisiana. On August 19, 2019, Ms. Paul filed a petition for damages on behalf of their minor child against the owner of the Port Royal Apartments, defendant LDG Port Royal Development, L.L.C. ("LDG"), and its insurer, Axis Surplus Insurance Company ("Axis") (collectively, "defendants").[1] In her petition, Ms. Paul alleged that at the time of the shooting, Mr. Tate was visiting his father, Murray Tate, who was a tenant at the Port Royal Apartments. Ms. Paul alleged that the direct and proximate cause of the shooting was the negligence of LDG in failing to provide for the safety of its tenants and their guests, failing to provide adequate security measures, and failing to provide security on the premises in light of known risks in the area.

On August 5, 2020, the defendants filed a motion for summary judgment on the basis that under Louisiana law, LDG owed no duty to Mr. Tate. Ms. Paul opposed the motion, arguing that adequate discovery had not been conducted and "myriad issues of material fact remain." In addition, Ms. Paul filed a motion to strike four of the exhibits attached to the defendants' motion for summary

---

[1] In her original petition, Ms. Paul erroneously named Axis Capital as LDG's insurer. She correctly named Axis Surplus Insurance Company, LDG's actual insurer, by an amended petition filed on November 20, 2019.

2

judgment. Following a hearing on November 16, 2020, the trial court signed a judgment on December 10, 2020 that granted in part and denied in part Ms. Paul's motion to strike, granted the defendants' motion for summary judgment, and dismissed Ms. Paul's claims with prejudice. Ms. Paul appeals that judgment.

## ASSIGNMENTS OF ERROR

Ms. Paul raises the following assignments of error:

(1) The trial court erred in granting summary judgment dismissing Ms. Paul's claims where the defendants failed to meet the burden of proof imposed upon them by La. C.C.P. art. 966 and genuine issues of material fact remain in dispute.

(2) The trial court erred in granting the defendants' motion for summary judgment because LDG had a duty to protect parties on its property from foreseeable risks of harm.

(3) It was an abuse of the trial court's discretion to refuse to allow additional time for Ms. Paul to complete discovery prior to granting summary judgment and dismissing her suit, given the extenuating circumstances such as the global COVID-19 pandemic.

(4) The trial court erred in denying partially the motion to strike exhibits to the defendants' motion for summary judgment by admitting the defendants' Exhibit B, the incident report, and Exhibit C, the lease agreement, into evidence.

## LAW AND DISCUSSION

The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

The burden of proof is on the mover. La. C.C.P. art. 966(D)(1). Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion, the mover's burden does not require him to negate all essential elements of the adverse party's claim, action, or defense.

3

Rather, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). If, however, the mover fails in his burden to show an absence of factual support for one or more of the elements of the adverse party's claim, the burden never shifts to the adverse party, and the mover is not entitled to summary judgment. *Durand v. Graham*, 2019-1312 (La. App. 1 Cir. 6/12/20), 306 So. 3d 437, 440.

In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Reynolds v. Bordelon*, 2014-2371 (La. 6/30/15), 172 So. 3d 607, 610. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. *Durand*, 306 So. 3d at 440.

Ms. Paul contends that LDG had a duty to protect parties on its property from foreseeable risks of harm. Whether a legal duty is owed by one party to another depends upon the facts and circumstances of the case and the relationship of the parties. *Terrell v. Wallace*, 98-2595 (La. App. 1 Cir. 12/28/99), 747 So. 2d 748, 750, writ denied, 2000-0297 (La. 3/24/00), 758 So. 2d 158. Duty constitutes a question of law. *Id.* Generally, there is no duty to control, or warn against, the criminal actions of a third person so as to prevent him from causing physical injury to another, unless some special relationship exists to give rise to such a duty. *Id.* Courts traditionally have found such relationships to exist between parent and child; employer and employee; carrier and passenger; innkeeper and guest;

4

shopkeeper and business visitor; restaurateur and patron; jailer and prisoner; and teacher and pupil. *Id.*

### Additional Time to Complete Discovery

We first address Ms. Paul's third assignment of error, that the trial court abused its discretion by refusing to allow her additional time to complete discovery given the extenuating circumstances such as the global COVID-19 pandemic.

Louisiana Code of Civil Procedure art. 966(A)(3) provides that a motion for summary judgment may be granted after an opportunity for adequate discovery if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. The requirement that a summary judgment should be considered only after "adequate discovery" has been construed to mean that there is no absolute right to delay action on a motion for summary judgment until discovery is complete; rather, the requirement is only that the parties have a fair opportunity to carry out discovery and to present their claim. *Campbell v. Dolgencorp, LLC*, 2019-0036 (La. App. 1 Cir. 1/9/20), 294 So. 3d 522, 527. Unless a party shows a probable injustice, a suit should not be delayed pending discovery when it appears at an early stage that there is no genuine issue of fact. *Id.*

Pursuant to La. C.C.P. art. 967(C), if it appears from the affidavits of a party opposing the motion for summary judgment that for reasons stated he cannot present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Trial courts in Louisiana have broad discretion when regulating pre-trial discovery, which discretion will not be disturbed on appeal absent a clear showing of abuse. *Primeaux v. Best Western Plus Houma Inn*, 2018-0841 (La. App. 1 Cir.

5

2/28/19), 274 So. 3d 20, 32. It is not an abuse of the trial court's wide discretion in discovery matters to entertain a motion for summary judgment before discovery has been completed. It is within the trial court's discretion to render a summary judgment or require further discovery. *Dortch v. Jane Doe & Chrysler Group, LLC*, 2016-0933 (La. App. 1 Cir. 4/6/17), 217 So. 3d 449, 454.

Mr. Tate was shot in August of 2018; Ms. Paul filed this lawsuit in August of 2019. Along with her petition, she propounded interrogatories and requests for production of documents. The defendants responded to this discovery in January 2020. The defendants propounded discovery, to which Ms. Paul responded in January 2020. The defendants filed this motion for summary judgment on August 5, 2020, which was not set for hearing until November 16, 2020.

Ms. Paul argues on appeal that she was not afforded a reasonable opportunity to take relevant depositions with all parties relevant to her case due to the global pandemic forcing businesses to close down, and witnesses being forced to quarantine. Governor John Bel Edwards issued an emergency order on March 16, 2020 suspending all legal deadlines until April 13, 2020.[2] On April 30, 2020, the governor suspended legal deadlines until May 15, 2020.[3] The deadlines were again suspended until June 5, 2020, then ultimately to June 15, 2020.[4]

During the period that the emergency orders were in effect, Ms. Paul was not prevented from engaging in written discovery, or seeking to take virtual depositions. The record does not contain any attempts to schedule depositions between the time the motion for summary judgment was filed on August 5, 2020, and the hearing on the motion on November 16, 2020. Ms. Paul did not file a motion to continue the hearing on the motion for summary judgment. Moreover,

---

[2] See Proclamation Number 30 JBE 2020.

[3] See Proclamation Number 52 JBE 2020.

[4] See Proclamation Numbers 59 JBE 2020 and 75 JBE 2020.

she failed to comply with the provisions of La. C.C.P. art. 967(C) requiring her to file an affidavit stating the reasons why she could not present by affidavit facts essential to justify her opposition to the motion for summary judgment, to allow the court to consider whether to order a continuance or to allow discovery. We find Ms. Paul's period to conduct discovery in connection with the motion for summary judgment to be more than adequate. See *Haygood v. Louisiana State Board of Dentistry*, 2020-1122 (La. App. 1 Cir. 4/16/21), 2021 WL 1438723, *3. Thus, we find the trial court did not abuse its discretion in failing to allow Ms. Paul additional time to conduct discovery, and find this assignment of error to be without merit.

### *Motion to Strike*

In her fourth assignment of error, Ms. Paul contends the trial court erred in partially denying her motion to strike exhibits to the defendants' motion for summary judgment by admitting the defendants' Exhibit B, the incident report, and Exhibit C, the lease agreement, into evidence.[5] We find no merit to this assignment of error because the December 10, 2020 judgment granted Ms. Pauls' motion to strike exhibits B and C. Further, we find that Exhibit B, the incident report, and Exhibit C, the lease agreement, were not properly authenticated. Because the incident report and lease agreement are not proper summary judgment evidence, we will not consider them in connection with our *de novo* review.

However, because the motion to strike is no longer a means of objecting to the documents offered by the defendants in their motion for summary judgment, we vacate that portion of the December 10, 2020 judgment granting the motion to strike. See *Ramus v. KCJS Trucking, LLC*, 2019-0039, 2019-0040 (La. App. 1 Cir. 9/27/19), 287 So. 3d 728, 733. Pursuant to La. C.C.P. art. 966(D)(2), any objection

---

[5] The trial court denied Ms. Paul's motion to strike the defendants' Exhibit D, the notice to vacate, and Exhibit E, the affidavit of Danielle Marshall. Ms. Paul does not raise the denial of her motion to strike these exhibits on appeal.

to a document shall be raised in a timely filed opposition or reply memorandum. The 2015 amendments to La. C.C.P. art. 966 changed the prior law by specifically removing the motion to strike as a means of raising an objection to a document offered by an adverse party in support of or in opposition to a motion for summary judgment. The intent of La. C.C.P. art. 966(D)(2) was to make it mandatory that any objection to a document filed in support of or in opposition to a motion for summary judgment must be objected to in a timely filed opposition or reply memorandum and not in a "motion to strike" or other pleadings. *Adolph v. Lighthouse Property Insurance Corporation*, 2016-1275 (La. App. 1 Cir. 9/8/17), 227 So.3d 316, 319-20.

### *Motion for Summary Judgment*

In her remaining assignments of error, Ms. Paul contends the trial court erred in granting summary judgment because the defendants failed to meet the burden of proof imposed upon them by La. C.C.P. art. 966 and genuine issues of material fact remain in dispute, and because LDG had a duty to protect parties on its property from foreseeable risks of harm.

The defendants' motion for summary judgment was based on the following:

(1) Under Louisiana law, LDG did not owe a legal duty to Mr. Tate (a non-tenant invitee) as LDG as a lessor/landlord had no legal duty to prevent prohibited, criminal acts of unknown third parties;

(2) The defendants did not know nor should have known that unwelcome, unknown third parties would engage in prohibited, criminal activity which would cause injury or death to Mr. Tate; and

(3) As Mr. Tate was prohibited from frequenting the subject premises due to his history of prohibited, criminal activity, the defendants could not be liable for unlawful, criminal activity of unknown third parties that led to his death.

In support of their motion for summary judgment, the defendants filed the

affidavit of Danielle L. Marshall, the property manager of the Port Royal Apartments. Ms. Marshall attested that on November 8, 2017, Murray Tate entered into a lease agreement with LDG/Port Royal Apartments, and was a resident of the Port Royal Apartments at the time of the August 23, 2018 shooting of Mr. Tate. Ms. Marshall further attested that Mr. Tate was not a resident of the Port Royal Apartments at any time, but an invitee of his father at all relevant times. According to Ms. Marshall, on July 16, 2018, she issued a notice to vacate to Murray Tate due to a violation of the drug free/zero tolerance policy of the Port Royal Apartments for the actions and violent activity of Mr. Tate while on the Port Royal Apartment premises. A copy of the notice to vacate was attached as an exhibit to the defendants' motion for summary judgment. The defendants also attached to their motion for summary judgment Ms. Paul's answers to interrogatories and requests for production of documents.[6]

In opposition to the motion for summary judgment, Ms. Paul filed her and the defendants' answers to interrogatories and requests for production of documents. She argued that unresolved factual issues remained as to LDG's knowledge of prior dangerous criminal activity at the apartment complex and whether the defendants exercised due care and provided adequate safety measures given the known risks of violent crime in the area, precluding summary judgment.

The trial court determined that the evidence submitted in connection with the motion for summary judgment established that Mr. Tate was shot by an unknown third party. The trial court further concluded that Mr. Tate was at the Port Royal Apartments as an invitee, not a resident, and that the only duty owed to Mr. Tate was a general duty owed to an invitee. The trial court found no showing of any breach of any duty that may have been owed. Finally, the trial court found the

---

[6] As discussed above, the defendants also attached an incident report and lease agreement to their motion for summary judgment. Because these documents are not proper summary judgment evidence, we do not consider them in our *de novo* review.

record was "void of any evidence that the defendant[s] knew or should have known that an unknown third party would commit a criminal act other than referenced to Mr. Jamison Tate's own conduct." Thus, the trial court granted the motion for summary judgment and dismissed Ms. Paul's case with prejudice.

On appeal, Ms. Paul argues that numerous issues of fact exist as to LDG's duty to tenants and visitors to provide a safe environment in the face of known violent criminal activity. In support of her argument, Ms. Paul cites the following language from *Patrick v. Employers Mut. Cas. Co.*, 99-94 (La. App. 3 Cir. 8/11/99), 745 So. 2d 641, 649, "although generally a lessor owes no legal duty to guests or invitees of a lessee to protect them against misconduct of third persons, the lessor may assume the duty to provide security." In *Patrick*, the parents of a bar patron who was shot during an altercation in a bar parking lot sued the owner of the shopping center in which the bar was located. Under a lease provision, the owner of the shopping center assumed the duty to provide security for the shopping center, and a jury found it breached that duty. *Id.* at 651. Herein, Ms. Paul produced no evidence in connection with the motion for summary judgment of a lease provision whereby LDG assumed a duty to provide security. Thus, we find *Patrick* has no bearing on this case.

Ms. Paul further argues that LDG assumed the duty to provide security, and its failure to provide security was evidenced by a broken security gate, which allowed third parties to gain access to the property at will. However, the only evidence submitted in connection with the condition of the security gate was contained in LDG's responses to discovery propounded by Ms. Paul. According to LDG, the security gates were operable in a proper manner on the date of the shooting, August 23, 2018.

Ms. Paul next contends that *Green v. Infinity International, Inc.*, 95-2356 (La. App. 1 Cir. 6/28/96), 676 So. 2d 234 "is a great case that highlights the legal

analysis that should be used" in cases involving a business owner's liability for injuries sustained by a patron as a result of the criminal acts of a third party. In *Green*, this court affirmed a summary judgment finding no liability on the part of a business owner for the fatal shooting of Ms. Green's mother, which occurred by an armed assailant in front of the defendant's place of business. This court found that the defendant business owner's duty to take reasonable care for the safety of its patrons did not extend to an unforeseeable criminal act. *Id.* at 236. Ms. Paul argues that the instant case is distinguishable in that the defendants herein had "personal knowledge of the murders and criminal activity on the property where [Mr. Tate] was murdered." However, Ms. Paul did not produce any evidence of criminal activity on the property. In fact, the only evidence of criminal activity introduced in connection with the motion for summary judgment is contained in LDG's responses to Ms. Paul's interrogatories. Ms. Paul's "Second Interrogatory No. 5 (11th)" requested that LDG:

> Describe any instance of criminal activity which occurred on the premise of the apartment complex includ[ing] the charge, date and disposition of each offense.

LDG objected to the request, but responded that in addition to the August 23, 2018 shooting, it was aware of activities that were potentially criminal and/or in violation of its drug free/zero tolerance policy that occurred in or at Murray Tate's apartment, or by acts of Murray Tate, Mr. Tate, and/or their guest(s)/associate(s) that took place outside of Murray Tate's apartment, but on the premises of the apartment complex. In response to a subsequent interrogatory regarding other shooting incidents on the premises, LDG stated that it was aware of a shooting involving another individual near the playground on the apartment complex after the instant shooting in September of 2018.

Thus, based upon our *de novo* review of the evidence filed in connection with the motion for summary judgment, we do not find that LDG had knowledge

11

of any previous criminal activity at the Port Royal Apartments or in the neighboring area other than that of Murray Tate, Mr. Tate, and/or their guest(s)/associate(s).[7]

Finally, Ms. Paul contends that we should remand this matter to the trial court based upon the Louisiana Supreme Court's opinion in *Kenney v. Cox*, 95-0126 (La. 3/30/95), 652 So. 2d 992 (*per curiam*). In *Kenney*, the plaintiffs' decedent was abducted, sexually assaulted, and murdered when she was picking up her grandmother at New Orleans Towers. The grandmother was a resident of New Orleans Towers, an apartment complex for the elderly, which was alleged to have emphasized security as well as a lighted parking lot in advertisements. In its brief *per curiam* opinion, the Supreme Court held:

> A summary judgment was granted when it is not clear that no legal duty was owed to the victim. Also there appear to be disputed issues of fact the resolution of which would aid in deciding the duty question. Trial of the matter is necessary to resolve the case. *Id.*

Based upon our *de novo* review of the evidence in this case, we do not find disputed issues of fact regarding the legal duty owed to Mr. Tate. The defendants introduced evidence that Mr. Tate was not a resident of the apartment complex, and thus no special relationship existed to give rise to a duty to control, or warn against, the criminal actions of a third person. See *Terrell*, 747 So. 2d at 750. Ms. Paul failed to produce factual support sufficient to establish the existence of a genuine issue of material fact that the shooter was other than an unknown third party. She further failed to produce factual support sufficient to establish the existence of a genuine issue of material fact as to whether LDG assumed a duty to provide security. See *Patrick*, 745 So. 2d at 649. Ms. Paul produced no factual

---

[7] Due to LDG's knowledge of the Tates' criminal activity, which took place on June 22-24, 2018, on July 16, 2018, Ms. Marshall issued to Murray Tate a notice to vacate the premises on or before August 31, 2018.

support sufficient to establish the existence of a genuine issue of material fact that LDG knew or should have known that an unknown third party would commit a criminal act. See *Green*, 676 So. 2d at 236. Accordingly, summary judgment was proper, and the portion of the December 10, 2020 judgment granting the defendants' motion for summary judgment is affirmed.

## CONCLUSION

For the foregoing reasons, we vacate that portion of the December 10, 2020 judgment granting in part and denying in part the motion to strike exhibits filed by Ja'Mira Paul, on behalf of her minor child, J. Paul. We affirm the remainder of the judgment granting a motion for summary judgment in favor of the defendants, LDG Port Royal Development, L.L.C., and Axis Surplus Insurance Company, and dismissing plaintiff's claims. Costs of this appeal are assessed to the plaintiff/appellant, Ja'Mira Paul, on behalf of her minor child, J. Paul.

**JUDGMENT ON MOTION TO STRIKE VACATED; SUMMARY JUDGMENT AFFIRMED.**

13